UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| V. JAMES F., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 22-230JJM |
| : | |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On March 11, 2020, Plaintiff V. James F., applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. At the time of application, Plaintiff was 48 years old with a bachelor's degree in business management and computer information systems and had worked for many years for a family-owned motel. His application, as amended, alleges onset of disability on November 15, 2017, based on extreme back, leg and hip pain; irritable bowel syndrome ("IBS"); hepatic abdominal aneurysm repair; palpitations; acid reflux; and arthritis in the spine. Tr. 111, 216. Now pending before the Court is Plaintiff's motion to reverse the decision of the Acting Commissioner of Social Security ("Commissioner") denying his DIB application. ECF No. 11. Plaintiff contends that the Administrative Law Judge ("ALJ") erred at Step Two by rendering a decision that lacked clarity and omits impairments that the state agency physicians had found to be severe and erred at the RFC[1] phase in failing properly to assess Plaintiff's use of a cane and in failing correctly to consider whether Plaintiff has additional limitations due to pain. ECF No. 11 at 9-15. Plaintiff also argues that the Appeal

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Council was egregiously mistaken in determining that certain additional evidence "does not show a reasonable probability that it would change the outcome of the decision." ECF No. 11 at 16 (quoting Tr. 6). The Commissioner has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 12. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez, 647 F.2d at 222).

## II. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 404.1520(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 404.1520(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

### B. Step Two Determination

The disability analysis ends at Step Two if the claimant's medically determinable impairments have not been "severe" for a consecutive twelve-month period. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment . . . is not severe if it does not significantly limit [the claimant's] . . . mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (b)(3)-(6). Non-severity is found where the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work. SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985). Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122 (1st Cir. 1986); Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom. Burge v. Berryhill, 2017 WL 435753 (D.R.I. Feb. 1, 2017). At Step Two, Plaintiff has the burden to show that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time. Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I. Mar. 3, 2020), adopted by text order (D.R.I. Mar. 30, 2020).

    **C.**    **Subjective Statements Regarding Pain**

The ALJ must consider a claimant's subjective statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3). SSR 16-3p directs the ALJ to consider the entire case record, including not only the objective medical evidence, but

also the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018). In this Circuit, the SSR 16-3p requirements are also reflected in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986), which requires examination of considerations capable of substantiating subjective complaints of pain including: (1) daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment, other than medication, received for relief of pain; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors relating to the claimant's functional limitations and restrictions attributable to pain. Cookson v. Colvin, 111 F. Supp. 3d 142, 154 (D.R.I. 2015).

Although an individual's subjective statements as to pain are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings." Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021) (internal quotation marks omitted). An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitation of function because of pain" is error. Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *3 (D.R.I. Aug. 1, 2022), adopted by text order (D.R.I. Nov. 7, 2022) (internal quotation marks omitted). Nevertheless, a reviewing court will not disturb a clearly articulated finding discounting such statements as long as it is based on substantial supporting evidence in the record. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

### D. Harmless Error

"[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Rivera v. Comm'r of Soc. Sec. Admin., Civil No. 12-1479(BJM), 2013 WL 4736396, at *11 (D.P.R. Sept. 3, 2013) (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)). If the likely outcome on remand is clear and the same as that reached by the ALJ, the error is harmless and the court may uphold the denial of benefits. Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999). Error is not harmless "[w]hen an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action." Lyons *ex rel.* X.M.K.L. v. Astrue, Civil Action No. 12-30013-KPN, 2012 WL 5899326, at *7 (D. Mass. Nov. 26, 2012) (quoting Seavey v. Barnhart, 276 F.3d 1, 12 (1st Cir. 2001)).

### E. Appeals Council's Consideration of Newly Submitted Evidence

The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); see Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023), adopted by text order (D.R.I. Mar. 7, 2023). When the Appeals Council denies review, the already deferential substantial-evidence standard of review is supplanted by the exceedingly narrow egregious error standard. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001); Suliman v. Saul, Civil Action No. 1:20-CV-11985-RWZ, 2022 WL 3108850, at *3 (D. Mass. Aug. 3, 2022). The Appeals Council's denial of review is afforded "a great deal of latitude" and "great deference." Mills, 244 F.3d at 5-6; David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 (D.R.I. Feb. 13, 2019). In this context, egregious has been

6

interpreted to mean "'[e]xtremely or remarkably bad; flagrant.'" Ortiz Rosado *ex rel.* Rosado Guitierrez v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)) (alteration in original). This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, Civil Action No. 06-30005-KPN, 2006 WL 3898287, at *2 (D. Mass. Dec. 22, 2006).

## III. Analysis

### A. Claim that ALJ Erred at Step Two

At Step Two, the ALJ found that Plaintiff had medically severe impairments and continued the sequential analysis to formulate an RFC that precisely tracks the limitations found by both of the non-examining state agency expert physicians. Tr. 74-75. The ALJ specifically found that these expert opinions were persuasive because they were based on "extensive rationales" and grounded on specific evidence. Tr. 78. The ALJ buttressed his RFC not only with these findings and his own survey of the record, but also with his unchallenged observation (as confirmed by the Court's record review) that the record contains no opinion from any source offering a more restrictive assessment. Tr. 75, 78. While not challenging this aspect of the ALJ's RFC opinion,[2] Plaintiff nevertheless argues that the ALJ erred at Step Two in finding that Plaintiff's claimed impairments of "spine disorder" and "aneurysm status post vein path angioplasty" were medically determinable severe impairments, while rejecting as non-severe other determinable impairments, specifically "palpitations, mild to moderate pulmonary insufficiency, varicose veins, gastroesophageal reflux disease, history of hiatal hernia, irritable bowel syndrome, hypocholesteremia, and obesity." ECF No. 11 at 10-12 (quoting Tr. 74).

---

[2] Plaintiff does challenge the RFC to the extent that the ALJ did not include limitations based on his use of a cane and on his subjective statements, both of which are discussed *infra*.

7

Plaintiff's first argument in support of this claim of error is based on the state agency physician experts' administrative findings. Appropriately categorized based on applicable ICD Codes,[3] both non-examining physician experts found that Plaintiff suffered from the following three "severe" impairments:

| Body System | | Impairment Diagnosis |
|---|---|---|
| 01 – Musculoskeletal system | 7240 | Disorders of Back (Discogenic and Degenerative) |
| 01 – Musculoskeletal system | 7280 | Disorders of Muscle, Ligament and Fascia |
| 04 – Cardiovascular system | 4590 | Other Diseases of Circulatory System (Venous Insufficiency) |

Tr. 113, 120. Plaintiff argues that the ALJ improperly rejected these findings without explanation in that his Step Two finding of two severe impairments ["spine disorder" and "aneurysm status post vein path angioplasty"] differs from the expert findings of three severe impairments. Specifically, Plaintiff contends that remand is required because the ALJ inexplicably omitted both "Disorders of Muscle, Ligament and Fascia" and "Other Diseases of Circulatory System (Venous Insufficiency)." ECF No. 11 at 10 (quoting Tr. 113, 120).

This argument fails, first, because Plaintiff has failed to establish the foundational premise. In this case, using the ICD Codes, the non-examining physicians found an impairment of the musculoskeletal system both based on degenerative disc issues and based on muscle/ligament/fascia issues. These findings are consistent with the treating medical record, which reflects that Plaintiff's back symptoms were caused both by degenerative disc issues and muscle issues. E.g., Tr. 559-60 (spine scan shows degenerative disc disease); Tr. 585 (diagnosis

---

[3] "ICD" or "International Classification of Disease" is a coding system adopted by the United States Department of Health and Human Services to classify "diseases, injuries, health encounters and inpatient procedures in morbidity settings." https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm. Pursuant to the Social Security Program Operations Manual System, the coding used for the disability determination explanation form is "based on a simplified version of the International Classification of Diseases (ICD) full code." POMS, DI 26510.015(B).

8

of lumbago [muscle pain] with left side sciatica). The ALJ's finding of a "spine disorder" is also consistent in that it encompasses both categories of impairment – that is, the ALJ specifically references both clinical findings of degenerative disc disease, as well as findings of muscle pain, for example related to muscle spasm. Tr. 77. Similarly, the non-examining physicians' finding that Plaintiff has a severe impairment affecting the cardiovascular system, which they classified as ICD 4590, "other diseases of circulatory system (venous insufficiency)," maps to the ALJ's finding of "aneurysm status post vein patch angioplasty." Tr. 74, 113, 120. The difference is one of semantics in that the ALJ labeled Plaintiff's cardiovascular impairment using the language found in the medical record.

Despite carrying the burden at Step Two, Plaintiff has failed to explain why the ALJ's Step Two severity findings are materially different from the analogous findings by the state agency physician experts. Having reviewed and compared the pertinent findings, I find no difference between what the ALJ found to be severe and what the non-examining physicians found to be severe. Thus, this claim of error fails because Plaintiff has failed to articulate how what appears to be a difference of semantics could be error.

The second – and fatal – flaw with this argument derives from the well-settled principle that an error at Step Two does not require remand as long as the sequential analysis continues and limitations arising from symptoms related to the overlooked impairment[4] are incorporated into the RFC. White v. Colvin, No. CA 14-171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015). That is what happened here. The non-examining physician experts surveyed Plaintiff's

---

[4] Plaintiff argues that there is one symptom that did not make its way to the RFC – the need to work with access to a restroom based on the diagnosis of irritable bowel syndrome ("IBS"). ECF No. 11 at 12. However, Plaintiff fails to cite to any record suggesting that he suffered from IBS that caused symptoms that required such a limitation to be incorporated into the RFC. The Court's independent review turned up no such record. This unsupported argument is rejected.

symptoms as reflected in this clinically complex medical record, applied their professional expertise and concluded that Plaintiff remained capable of light work, reduced by certain postural limitations. Tr. 113-14, 121-22. As Plaintiff concedes, the ALJ's RFC is precisely based on their expert findings, which he found to be persuasive because:

> The medical consultants provided extensive rationales to support their findings, citing to specific evidence of record and resolving inconsistencies in the record. They assessed specific functional limitations and abilities consistent with the finding on diagnostic imaging and physical examinations.

Tr. 78. The ALJ's RFC is further appropriately supported by the finding that, "no treating physician of record has offered a more restrictive assessment of the claimant's work-related restrictions and limitations." Tr. 78. Thus, even if the semantical differences between the Step Two findings of the non-examining expert physicians and the ALJ somehow were found to amount to error, remand is not required because any such error is harmless.

Plaintiff's other challenge to the ALJ's Step Two decision is equally unavailing. He contends that the ALJ's decision is ambiguous in that the Step Two finding is unclear in describing which impairments were found to be severe and which were found to be non-severe. ECF No. 11 at 11-12. I find no ambiguity. To the contrary, I find that the ALJ's decision is crystalline, highlighting the two severe impairments, and reviewing the evidence that establishes that the others were "chronic conditions that are manageable with medications and intermittent monitoring." Tr. 74. Nor does Plaintiff point to any evidence to establish that any of these impairments caused symptoms that impacted the ability to work during the relevant period beyond the limitations incorporated into the ALJ's RFC. The Court's independent survey of the record confirms that there is no such evidence. To take just two examples, Plaintiff claims heart palpitations and pulmonary insufficiency as disabling impairments, but his treating cardiologist noted:

> He has had palpitations in the past. Last year he was particularly bad. This year he has not had any. . . . Mild to moderate pulmonary insufficiency. This was noticed on a previous echocardiogram. This year he still has only trace pulmonary sufficiency and trace tricuspid regurgitation. . . . [I]t truly appears to be quite normal. . . . Advised him to see me back in a year.

Tr. 778-79. There is no contrary evidence suggesting that these two impairments were sufficiently impactful on work capacity as to categorize them as "severe" at Step Two. Thus, the ALJ's decision that they were not severe is both clear and free of error.

>> B. Claim that ALJ Erred in Failing Properly to Assess Plaintiff's Use of Cane

Plaintiff's argument that the ALJ erred in failing to include the need to use a cane in the RFC rests on the unsupported contention that "James is seen to need use [sic] a cane throughout the record." ECF No. 11 at 6. This proposition is simply incorrect. In fact, the record reflects that Plaintiff himself conceded in his function report that he has not used a cane. Tr. 244. No medical provider has ever recommended or prescribed the use of a cane. During the record developed for the relevant period, the only reference to Plaintiff's use of a cane occurred while he performed certain exercises during physical therapy appointments. Tr. 855, 960. According to Plaintiff's own testimony, he uses a cane only "on occasion I might have to use a cane or a crutch to get out of the car or maybe from the chair." Tr. 98. And Plaintiff's submission to the Appeals Council reflects a single instance of use of a cane after Plaintiff experienced "a very bad" muscle spasm in his back from bending down to pick up keys; he was still using the cane on the day following this acute episode when he was seen by his treating provider. Tr. 35. However, other than "left [side] lumbar spasm," the treating provider's physical examination was normal and he did not prescribe continued cane use. Tr. 37-38. Instead, he opined, "male does not need help with daily living." Tr. 39.

11

The ALJ accurately noted that the only evidence of use of a cane was Plaintiff's testimony that he used one occasionally to get in and out of the car, a subjective statement that the ALJ appropriately discounted because it clashes with other evidence. Tr. 76. There is no error in the ALJ's failure to include use of a cane in the RFC. I recommend that Plaintiff's cane-based argument should be rejected.

### C. Claim That ALJ Failed Correctly to Consider Whether Plaintiff Had Limitations Due to Pain

Plaintiff argues that the ALJ's RFC lacks appropriate limitations – both physical and mental – caused by pain because the ALJ based his decision exclusively on objective findings, thus failing to comply with the pain-analysis rubric in SSR 16-3p, which mirrors the First Circuit's Avery decision.[5] However, Plaintiff cites nothing to support a more limited RFC; instead, he asks the Court to examine the ALJ's decision, which he contends is so facially insufficient as a matter of law that remand is required. I disagree.

As the Commissioner argues, far from being facially flawed, the ALJ's decision reveals that he appropriately followed the guidance in SSR 16-3p, in that he considered Plaintiff's subjective statements about pain, both those made on application and those reflected in the treating record and analyzed them based on a detailed survey of the treating record to explore what limitations pain was causing. Tr. 76-78. Far from limiting this review to the "MRI

---

[5] Plaintiff also relies on a sentence in the ALJ's decision, which states, "the neurology treatment notes are persuasive of greater functional limitations than adopted herein." Tr. 77. Read in context, as confirmed by the pertinent record (the neurology notes, which contain largely benign observations, Tr. 577-91), the ALJ's decision is palpably clear – "not" was omitted by scrivener's error from this sentence. It is well settled that such an obvious typographical mistake is not grounds for remand. See, e.g., James S. v. Saul, C.A. No. 18-453WES, 2019 WL 4862248, at *7 (D.R.I. Oct. 2, 2019) (scrivener's error does not require reversal as long as ALJ's intent is clear); Cruz o/b/o Fonseca v. Colvin, C.A. No. 14-526ML, 2016 WL 1068860, at *10 (D.R.I. Feb. 18, 2016) (discussing scrivener's error), adopted sub nom. Cruz v. Colvin, 2016 WL 1069059 (D.R.I. Mar. 17, 2016); Hudon v. Astrue, Civil No. 10-cv-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011) (collecting cases regarding scrivener's errors). I do not recommend remand on this basis.

findings" and similar objective findings on examination,[6] as Plaintiff contends, the ALJ contrasted the subjective statements with the entirety of the record, including the many treating physician observations that Plaintiff was "doing well," "'doing remarkably well,'" and "stable," Tr. 76 (quoting Tr. 335); the absence of reference by treating providers to specific limitations caused by the complained of pain, Tr. 78; and Plaintiff's treatment for pain, which was consistently conservative, Tr. 78. By way of an example pertaining to treatment for relief of pain, the ALJ accurately relied on the record from the surgeon to whom Plaintiff was referred based on his complaints of pain; this surgeon noted:

> We recommended a conservative approach for his pain, which could be arranged by his primary care provider, and wished him well. . . . I provided reassurance that the examination was normal, and the MRI had shown only the expected wear and tear (degenerative) changes one would expect in people as they age. I explained that bulges, protrusion, and even certain degrees of stenosis were common and normal, and seen in most people as they moved through their 20s, middle age, and beyond. I explained that the pain and other symptoms would not be improved with surgery, and were best approached in a conservative manner. . . . I . . . will not need to schedule a follow-up visit unless additional problems arose. I encouraged a conservative treatment plan consisting of physical therapy, chiropractics, interventional pain management (if not already done), as well as non-habituating medications, good nutrition, and a regular exercise program.

Tr. 767.[7] And the ALJ did not ignore the impact of pain on mental functionality; to the contrary, he considered it, noting (accurately) that the record consistently reflects the absence of mental health issues. Tr. 76-78 ("claimant was alert, fully oriented, and in no distress . . . claimant was

---

[6] To be clear, the ALJ appropriately considered that Plaintiff was seen by an array of specialists in response to his complaints of pain associated with his spine/muscle and cardiovascular impairments, yet his physical examinations by those specialists resulted in findings only of tenderness with occasional pain elicited on motion, but rarely muscle spasm, negative straight leg tests, normal strength, normal gait and station, and largely normal range of motion. Tr. 77-78. That is, the objective evidence squarely contradicts Plaintiff's subjective statements. Plaintiff's challenge to the ALJ's approach to the subjective statements fails because the ALJ did not limit his consideration of pain to this consistently benign evidence.

[7] Two months after the surgeon expressed this opinion, sending Plaintiff back to the primary care provider for further treatment of back pain, he was seen by the primary care provider for the annual physical; this treating provider noted complaints of back pain, but opined, "aneurysm . . . is stable . . . [o]therwise is doing very well and lost some weight." Tr. 733-39. These notes reflect that the musculoskeletal examination was normal, exercise and weight loss were recommended and no other treatment for back pain was prescribed.

in no distress and his concentration was intact . . . normal attention and concentration"). The Court's review of the record confirms that these findings are well supported by the evidence cited by the ALJ, as well as by other evidence of record. <u>See, e.g.</u>, Tr. 456-57 (based on review of scans and largely normal physical examination except for tenderness, orthopedist recommends physical therapy "with core strengthening exercises and spine mobilization exercises"); Tr. 497, (primary care physician notes "male does not need help with daily living"); Tr. 607 (primary care physician notes, "patient advised that he has to get his paper filled out for lawyer for disability from the orthopedic doctor and neurology who have done an extensive study on him and even I have asked unaware of that he is getting chronic pain care from the orthopedic and neurology until today. I sent paper to lawyer back that patient need[s] this form to be filled out by the specialist[s] who are treating patient."); Tr. 708 (cardiologist notes "[h]e usually walks for an hour and he does not get symptoms during that").

In short, I find no error – far from overreliance on objective evidence, as Plaintiff charges, this ALJ focused his decision on appropriately analyzing Plaintiff's subjective complaints consistent with the requirements of SSR 16-3p and <u>Avery</u>. Alternatively, I find that Plaintiff's argument fails because he has not provided the Court with any specific information regarding what are the subjective statements that the ALJ should have credited and how these statements mesh with the other relevant evidence. Thus, if there were error (and I find none), it should be deemed harmless. See <u>Belanger v. Barnhart</u>, No. 06-13-B-W, 2006 WL 3519307, at *2 (D. Me. Dec. 6, 2006) (when plaintiff does not identify testimony about symptoms that would necessarily be inconsistent with ALJ's RFC, failure to discuss plaintiff's subjective testimony about symptoms renders alleged error harmless). More importantly, in light of the dearth of specifics to support Plaintiff's argument (leaving the Court "to sort out [the arguments] on its

own"), I also alternatively find that this argument should be rejected as waived. See Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 n.4 (D.R.I. Sept. 2, 2021) (when claimant presents no argument to support proposition that ALJ's finding is tainted by error, Court cannot speculate what she intended; contention deemed waived), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021); Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) (arguments that are not developed "are clearly throw-in arguments left for the [c]ourt to sort out on its own and, as such, are deemed waived") (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005)), adopted by text order (D.R.I. Aug. 18, 2021).  Relatedly, I rely on the settled proposition that, with the burden of proof on the claimant at the RFC phase of the sequential analysis, "the ALJ may disregard subjective claims of pain if they are unsubstantiated and he does not credit them," as long as there is also no evidence establishing that the pain caused limitations. Mills, 244 F.3d at 7; see Kellilea F. v. Kijakazi, C.A. No. 21-00410-JJM, 2022 WL 2128625, at *8 (D.R.I. June 14, 2022) ("Plaintiff does not point to any opinion finding that she would miss work or be off task in a way that conflicts with the ALJ's RFC finding and would support her burden of proof"); Joseph N. v. Berryhill, C.A. No. 17-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018) ("While Plaintiff has referenced evidence of sensory loss, he fails to establish how these findings establish greater limitations to his RFC.").  As Plaintiff bears the burden of establishing his RFC and he has failed to demonstrate more restrictive limitations than imposed by the ALJ, he has failed to demonstrate any error. See Joseph N., 2018 WL 2722461, at *7.

      Based on the foregoing, I find that the ALJ's consideration of Plaintiff's subjective statements is consistent with applicable law and well supported by substantial evidence. Therefore, I recommend that this aspect of his decision be affirmed.

### D. Claim that Appeals Council was Egregiously Mistaken

Plaintiff submitted more than fifty pages of new material to the Appeals Council. Focusing on three items in this tranche, he argues that the Appeals Council committed egregious error in determining that this additional evidence "does not show a reasonable probability that it would change the outcome of the decision." ECF No. 11 at 16 (quoting Tr. 6). The Court may afford this argument short shrift – the three items Plaintiff highlights are entirely consistent with what appears in the record reviewed by the ALJ. See Tr. 35-41 (record reflects use of cane following "very bad" muscle spasm in back from bending down to pick up keys; treating provider did not prescribe continued cane use); Tr. 44 (neurologist examination largely normal except for tenderness on palpation and pain elicited by motion); Tr. 63 (spine x-ray shows abnormalities). There is no error at all, never mind an "egregious mistake" in the Appeals Council's determination. I do not recommend remand on this basis.

### IV. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and the Commissioner's Motion for an Order Affirming her Decision (ECF No. 12) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN

United States Magistrate Judge
May 3, 2023